BANK OF MONTPELIER *vs.* LUTHER DIXON.

Where the payees of a promissory note, without the request of the surety, commen-ced a suit thereon, and attached the property of the principal, and afterwards, by an arrangement made with the principal, dissolved the attachment and discontinued the suit,—it was held in an action brought against the surety on said note that he was not thereby released from his liability thereon.

This was an action of *assumpsit* on a promissory note for $4000, payable to the *Bank of Montpelier*, in ninety days from date, with the names of Gideon O. Dixon, *Luther Dixon*, Geo. Howe, and Peter Shaw subscribed thereto, in the order here given, as joint and several promissors—dated April, 1826, and discounted at the bank on the 26th day of April, 1826. Plea, *general issue*, and trial by jury.

The note declared on having been read in evidence, it was proved, that the same was presented for discount by Gideon O. Dixon, who had previously notified the plaintiffs that he should have occasion for a considerable sum of money in his business; and he had received encouragement of being accommodated. He received the money, and it was understood, though not express-ly proved, that the other persons, whose names were subscribed to the note, if liable upon the same, were sureties for the said Gide-on O. Dixon, as between him and themselves; and that it was so considered by the plaintiffs. It was also proved, that within the ninety days from the time of discount, the said Gideon paid $2000, upon said note, which was indorsed thereon; and, that, according to the usage of the bank, this would have the effect to extend the time of payment for the residue ninety days longer, un-less the plaintiffs should think it expedient for their security to en-force payment in the mean time. It was also proved, that about the —— day of October, 1826, the plaintiffs, deeming it expedient for their better security, commenced an action upon the note against the said Gideon and all the other persons whose names were sub-scribed to the same, and caused a drove of cattle, worth about $2000, to be attached in said suit as the property of said Gideon —That within a day or two after said attachment, upon applica-tion of said Gideon, and upon doubts being entertained whether all the cattle attached could be holden, the plaintiffs accepted an-other note for $2000, payable to them in twenty days, signed by said Gideon O. Dixon, William Barney, and Ziba Wood, dated October ——, 1826, and thereupon dissolved said attachment, and discontinued the action—That immediately after this arrange-ment the said Gideon caused said cattle to be driven to Boston, where he disposed of them for his own benefit, and soon after ab-

Washington,
March,
1832.

Montpelier B'k.
vs.
Dixon.

sconded, without ever returning to this state. The discount of the note in question, the payment of $2000, upon the same, as above stated, as also the commencement of said action and the attachment aforesaid, the acceptance of the new note for $2000, the dissolution of the attachment, and the discontinuing of the action, all took place without any communication relating to the same between the plaintiffs and any of the persons whose names were subscribed to the note in question, except the said Gideon O. Dixon. Thos. Reed, jr. the cashier of said bank, being sworn as a witness, testified, that he, in behalf of the plaintiffs, transacted with Gideon O. Dixon the business of dissolving the attachment, and receiving said new note for $2000—That at the time the sum of $2000, and the interest thereon from the expiration of the first ninety days, was due upon the note in question—That the said Gideon upon that occasion gave verbal assurances to the witness, that within the twenty days he would pay the amount of said new note to the agent of the plaintiffs in Boston—That said new note was not accepted nor received in payment, nor part payment, of the note in question, but only as collateral security for the same debt—That no agreement was made nor promise given to delay calling for payment on the note in question, nor again suing the same at any time within the twenty days—and that within the twenty days, to wit, about ten days after receiving the new note, the witness did forward to Boston the note in question, (retaining in his hands said new note,) for the purpose of having the same immediately put in suit there against said Gideon. The witness did not recollect that he reserved the right to enforce payment of the note in question, within the twenty days, by any distinct and express declaration to that effect, addressed to said Gideon; but he testified that it was expressly stipulated that the new note was not to be regarded as payment, but merely as collateral security. He also testified that the new note had been prosecuted to judgement and execution, and that $400, had been collected thereon, the residue being uncollectable. The defendant insisted that, upon the facts above stated, and the testimony of Reed, his liability upon the note in question, if he was ever liable, had been discharged, and that he was entitled to a verdict; 1st. because the plaintiffs relinquished said attachment without the knowledge or consent of the defendant. 2d. Because they had stipulated to give further time to Gideon O. Dixon, without the knowledge and consent of the defendant. Whereupon the court decided, that by reason of the dissolution of said attachment, in

manner aforesaid, the defendant was discharged, and directed a
verdict for the defendant, which was returned accordingly, and
judgement rendered thereon.   To which direction of the court the
plaintiffs excepted, and brought the cause to this Court,and moved
for a new trial.

WASHINGTON,
March,
1832.

Montpelier b'k.
vs.
Dixon.

*Smith and Peck, for the plaintiffs.*—1. Does the dissolving the
attachment against Gideon O. Dixon discharge the defendant?
The undertaking of the defendant, if he is to be viewed as a surety,
is absolute, and not conditional, as is the engagement of on endor-
ser.   It was his duty to see that the note was paid.   The plain-
tiffs have their remedy immediately against all or either of the
promissors.   Mere delay to sue does not in any case prejudice
the claim of the creditor, unless accompanied by stipulations, va-
rying the contract, or giving time to the principal, so that he
could not sue, if requested by the surety.—5 *Pick.* 307 ; 2 *Pick.*
581 ; 10 *East,* 34 ; 1 *B. & P.* 419 ; 3 *Yates,* 160 ; 2 *Johns.*
*Ch. R.* 554 ; 15 *Johns. Rep.* 433.   Nor would it have consti-
tuted any defence to this suit, had the sureties, previous to the
insolvency and absconding of Gideon O. Dixon, requested the
plaintiffs to put the note in suit, and they had neglected to do it,
in consequence of which the debt was lost, as against him.—2
*Johns. Ch. R.* 554 ; 2 *Pick.* 612 ; 4 *Pick.* 382.   And such is
the rule of the civil and French law.—*Pothier on oblig.,* Evans'
edition, 237, art. 6 ; 3 *Wheaton,* 157, n. a.   At all events, it
would not operate as a discharge, unless there had been an offer
to indemnify the bank against the cost and charges of the suit.—
5 *Pick.* 307 ; 4 *Johns. Ch. R.* 132 ; *Pothier on oblig.,* 237,
art. 5.

The only authorities that militate against this doctrine, are the
cases of *Paine* vs. *Packard,* (13 *Johns. R.*) and *King* vs. *Bald-*
*win,* in error, *(17 Johns. R.)*   But the first mentioned case ap-
pears not to have been argued at the bar, and the court grounded
their opinion, in a great measure, on the decision of the case,
*The People* vs. *Jansen,* (7 *Johns. Rep.*) the authority of which
was in a great measure overruled by the Supreme Court of the
United States, in *U. S.* vs. *Kirkpatrick,* (9 *Wheaton,* 720,)
and is denied to be law in this state.—1 *Aik. R.* 296.   In the
case of *Frye* vs. *Barker* et al. (4 *Pick.* 382,) before cited, *Par-*
*ker,* Ch. J., says, " we have never adopted the law stated to be
settled in *Paine* vs. *Packard,* and it is to be doubted whether
that is the law of New-York.   There seems to be no reason, in the

Washington,
March,
1832.
────────
Montpelier b'k.
vs.
Dixon.
case of money contracts, for discharging the surety, because the promisee neglects to sue the principal, for the surety may pay the debt and then bring an action himself. The case of *King* vs. *Baldwin* may be relied upon as an authority conflicting with that of *Paine* vs. *Packard*, as a majority of the judges, and the weight of the legal talent, was in favor of affirming the decree of the chancellor. If the decision in the case of *Paine* vs. *Packard*, is to be regarded as sound law, then, there can be no necessity, in any case, of going into chancery to compel the creditor to put his demand in suit against the principal ; and yet this always has been deemed a subject of equity jurisdiction.—5 *Bro.* 578 ; 2 *Johns. C. R.* 562.

The decisions which have taken place in courts of equity in cases of this nature, have always proceeded on the notion, that at law, the thing prayed for could not be done.—5 *B. & A.* 187. If, then, the plaintiffs could have secured the debt against Dixon, and they were requested so to do by the defendant, and neglected to take any measures against him, and thereby the debt is lost, as against him, and yet all this will not discharge the sureties, what foundation is there for the argument, that dissolving the attachment for an honest purpose, releases them, when it was made without their knowledge or request ? Would they not be as much injured in the one case as in the other ? Does it lie in the mouth of the sureties to object to this act of the plaintiffs ? They might, and ought, to have paid the debt, and then secured themselves on the property of Dixon. In *King* vs. *Baldwin, Chancellor Kent* said, " the cases of discharge are all founded on the fact of a *new agreement* between the debtor and creditor, *varying* the contract, by which the surety originally stood bound." The reason why the surety in such cases is discharged, is, that it is not the *same* contract which he engaged should be performed, and his risk may be increased by the variation.—3 *Merivale*, 277. And so it is said that extending the time of payment shall release the surety, *because* he has a right, on the day the debt is due, to come into chancery, and insist on its being put in suit ; and if the creditor has suspended this right, by a new agreement with the debtor, he has disabled himself to do that equity to the surety which he had a right to demand.—2 *Vesey, jr.* 540 ; 18 *Vesey*, 20. But dissolving the attachment, in the present case, did not vary the original contract, nor increase the risk of the defendant, nor extend the time of payment. He might for all this have paid the note, and sued Dixon, or, perhaps, have gone into chancery, and compel-

led the plaintiffs to sue.—*Pothier oblig.* 323, *art.* 6. Upon what
principle, can it be held, that the defendant is discharged? He
did not become surety on the faith of this attachment, nor even
request it to be made ; and the whole case shows that the plain-
tiffs acted in perfect good faith, and in a manner they believed
for their interest, and that of the sureties. It was not known what
part of the cattle Dixon owned, and it was, therefore, thought to
be for the interest of all concerned, to release the cattle and take
the note, which was then supposed to be good. It is true, that
where the surety pays the debt, he may come into chancery and
compel the creditor to transfer to him every security which he
took, at the time the debt was contracted, and possibly those that
were subsequently obtained, if they remained in his hands, al-
though the doctrines laid down by *Pothier, (no.* 496, 519, 520,)
cited by the Chancellor, in *Hays* vs. *Ward, (4 Johns. Ch. R.*
130,) do not go as far as this, and it is believed no case can be
found which does. The general principle, that a surety has a
right to have assigned to him the securities taken by the creditor,
is laid down in the last mentioned case ; but the Chancellor does
not intimate that the case, then under discussion, fell within that
principle, though for special reasons an injunction was granted ;
and it appears the case was never moved again. That case, too,
may be distinguished from this, for Hays was an accommodation
endorser for the maker, and this known to Ward, and his under-
taking was only conditional, that he would pay, if the maker did
not, as is the undertaking of every indorser.—*Law* vs. *E. I.
Co.,* 4 *Vesey* 829 ; *Commonwealth* vs. *Vanderslice et al.*
8 *Serg. & Rawle,* 452. This is no doubt so in equity, however
it may be at law ; but it does not impugn the right of the plaintiffs
to recover, even in equity, for no money has passed into their
hands. The case of *Rathbone et al.* vs. *Warren, (*10 *Johns. R.*
587,) was, where the creditor had given the principal a written
agreement not to take out execution for a given time : this, it was
rightly held, discharged the surety. The case of *Jones* vs. *Bul-
lock, (2 Bibb,* 467,) and *Baird* vs. *Rice, (*1 *Call,* 18,), are ci-
ted in note to *Starkie's Ev.* 1390, as deciding, that where property
of the principal was taken on a *fieri facias,* and afterwards re-
stored to him, without the privity of the surety, he was dis-
charged. In these cases the property must have been levied upon,
at the request, and for the security, of the surety. But were it
otherwise, these reports are not good authority, and have never
been regarded as such by this Court. The weight of authority,

WASHINGTON
March,
1832.

Montpelier b'k.
vs.
Dixon.

as well as reason, is against these decisions. Thus, when the holder of an indorsed note had recovered judgement against the maker and indorser, and the latter requested him to take out execution and levy upon the property of the maker, which he neglected to do, the Court held, that the endorser was not discharged, although it appeared, that he countermanded the execution, after it was in the hands of the officer, and that the debt might have been collected of the maker, had it been proceeded in.—3 *Wheaton*, 520. So the surety is not discharged by the creditors giving time to the principal debtor, or even by his discontinuing a suit commenced against the principal, without the privity and consent of the surety, unless the surety has explicitly required him to proceed against the principal.—15 *Johns. R.* 433 ; *Pothier on oblig.* 233. So where the payee of a note sued the maker, and attached personal property, and afterwards sold the note against the consent of the surety, whereby the property was released,—it was held, that the surety was not discharged, though the principal afterwards became insolvent, and the debt against him was lost.—5 *Pick.* 370. The case of *Halford* vs. *Brown*, (*Pre. in Chan.* 178, *cited in Fell. on Guar.* 216,) is nearly parallel in every particular with the present one.

If the defendant has any relief, it is in equity, not law.—5 *B. & A.* 187 ; 1 *Holt's cas.* 399, *n.*

2. The payment of $2000, at the expiration of the ninety days, on the understanding, that according to the usage of the bank, this would have the effect of extending the time of payment for the residue, ninety days longer, cannot discharge the defendant ; because, 1. It is to be presumed that the defendant signed the note, knowing such was the custom of the bank ; and 2. The plaintiffs, by this usage, reserved the right of suing when they deemed it for their security ; and no agreement between the payee and principal will discharge the surety, unless it is founded on a sufficient consideration, and binding in law upon the parties.—12 *Wheaton*, 554.

3. The question whether taking the note payable in twenty days, was giving time for the payment of the balance due on the original note, is purely a question of law, and calls for a decision of this Court. The case shows that the note was taken merely as collateral security ; that it was not a substitution of one note for the other. The case of *Gould et al.* vs. *Robson et al.* (8 *East*, 576,) is clearly distinguishable from this. There, the plaintiffs, being endorsees of a bill of exchange, when the bill

fell due, received part payment from the acceptor, and agreed to draw a bill on him for the remainder, payable at a future day, which he accepted ; and that until the last mentioned bill was paid, the plaintiffs should keep the original bill in their hands as security. Here the plaintiffs could not sue till the bill became due, as they had expressly agreed to keep the original bill in their hands till that time.    Besides, the new bill was substituted for the old, which was to be retained only as security.   This, it must be observed, too, was a case between an endorser and endorsee.   It is a principle as well settled as any other in the law, that the mere change, or addition of securities, not displacing the original debt, nor suspending for a time the creditor's right of action, will not discharge the surety.—18 *Vesey*, 20; 3 *Com. L. R.* 143, *n.* 35. Thus, where the obligee took additional and collateral security from the principal, and even prolonged the time of payment for the additional security, it was held that the surety was not discharged.— 1 *Desauss.* 315, *cited in note* 1 *to Stark. Ev.* 1390.   The indulgence granted to a principal which will discharge the surety, must be of that kind, by which the nature of the contract is changed, or whereby the creditor, without the consent of the surety, deprives himself of the power of suing by something obligatory, which prevents the surety from coming into a court of equity for relief.—3 *Com. L. R.* 35 ; 1 *Aik. Rep.* 296 ; 4 *Harris* & *McHenry,* 41 ; 3 *Stark. Ev.* 1390, *n.* 1.

*Merrill and Upham, for the defendants.*—As between the creditor and the surety the principle appears to be well settled, that the creditor can do no act with the principal alone, which shall injure or impair the rights of the surety, without discharging him from his responsibilities.   Sureties are the favourites of courts of justice, and, as *Chancellor Kent* said, in *Ludlow* vs. *Simonds, (2 Caine's Cas. in Error,* 1,) " It is a well settled rule, both at law and in equity, that a surety is not to be holden beyond the precise terms of his contract ; and a court of equity will never lend its aid to fix a surety beyond what he is fairly bound to at law."—It is not contended by the defendant that *mere delay* on the part of a creditor would discharge a surety ; but the defendant does insist, that if the creditor undertakes to act, he must act in good faith towards the surety, and must not by relinquishing any security obtained by such act, impair the rights or increase the risk of the surety.   The principle laid down by Lord *Loughborough,* in *Rees* vs. *Berrington,* (2 *Ves., jr.* 543,) was, that

75

WASHINGTON,
Morch,
1832.

Montpelier b'k.
vs.
Dixon.

there could be no transaction with the principal debtor without acquainting the surety who has a great interest in it. The surety only engages to make good the deficiency, and it is the clearest and most evident equity, not to carry on any transaction without the privity of him, who must necessarily have a concern in every transaction with the principal debtor. "You cannot," said the Chancellor, " keep him bound, and transact his affairs, without consulting him." He must be the judge whether indulgence shall be given to the principal or not.—*Vide Rathbon e* vs. *Warren,* 10 *John. R.* 587 ; *Fell on Guaranty,* 198. In *English* vs. *Darby, (2 Bos. & Pul.* 61,) where the endorsee of a bill, having the right to sue all the parties, sued the acceptor to judgement, and took out execution, on which he received part payment, and a bond and warrant of attorney as a security for the remainder, with a view to enable him to support actions against the other parties to the bill, *Lord Eldon* said, " The plaintiff, having taken a *new security* from the acceptor, has discharged the other parties to the bill."—Upon the same principle, the defendant in this case would be discharged;for the plaintiffs having sued the principal,and attached sufficient of his property to secure their debt, released such attachment, and took a new security for the debt. In *Paine* vs. *Packard, (*13 *John. R.* 174,) the Supreme Court of New-York went so far as to say, that the payee of a note, by neglecting to prosecute the note after *request* by the surety so to do, until the principal becomes insolvent, thereby discharges the surety. But in *King* vs. *Baldwin, (2 J. Ch. R.* 554–61,) *Chancellor Kent* denied that case to be law, but admitted that a surety might resort to chancery on the day after the debt is due, and insist on its being put in suit ; and if the creditor then refused to prosecute, the surety would be discharged. In this manner, according to the doctrine of the Chancellor, the surety, by paying the trifling expense of a bill in chancery, might obtain the same relief that he would be entitled to on a simple request, according to the decision of the Supreme Court. But this decision of the Chancellor, on appeal, was overruled in the court of errors by a small majority, and the doctrine of *Paine* vs. *Packard* supported. In referring to that case, *Spencer, C. J.* says, the principle adopted there was this, that when the creditor did an act injurious to the surety, the surety would be discharged. And again he says, the case of *Rathbone* vs. *Warren,* decided in that court with entire unanimity, establishes the principle, that if the creditor does any act im-

WASHINGTON
March,
1832.

Montpelier b'k.
vs.
Dixon.

pairing the rights of a surety, without consulting the surety, the latter will be discharged.—17 *Johns. R.* 384.

The following are a few among the many cases which support the doctrine, that the creditor can do no act to invalidate or discharge the security he has taken of the principal debtor, to the prejudice of the rights of the surety, without discharging him :— *Hayes* vs. *Ward,* 4 *Johns. Ch. Rep.* 130 ; *(2 Sw. Dig.* 151 ; 1 *Mad.* 196 ;) *Jones* vs. *Bullock,* 2 *Bibb,* 467 ; *(3 Stark. Ev.* 1390, *n. ;) Rathbone* vs. *Warren,* 10 *Johns. Rep.* 587 ; *Baird* vs. *Rice,* 1 *Call,* 18 ; *Law* vs. *East India Co.,* 4 *Ves. jr.* 824 ; *Commonwealth* vs. *Vanderslice,* 8 *Serg. & Rawle,* 452 ; *Nisbit* vs. *Smith,* 2 *Bro. C. C.* 579 ; *Baker* vs. *Briggs,* 8 *Pick.* 122.

Let us apply the principles established by these authorities to the case at bar. Had the plaintiffs at the time of discounting the note in question, or at a subsequent period, taken of Gideon O. Dixon, without the knowledge of the sureties, the cattle mentioned, as additional security, there could have been no doubt but that the sureties would have been discharged, if the plaintiffs had afterwards returned said cattle to him without their consent. The same would have been the case, had the plaintiffs taken a mortgage of the principal, as additional security, and had afterwards discharged it without the consent of the sureties, for the very obvious reason, that the risk of the sureties would have been thereby increased. And for the same reason, the defendant insists, the releasing of the attachment in this case discharged him ; for it is most evident from the facts appearing upon the bill of exceptions, that if the plaintiffs had not released the attachment, the sureties would never have been called upon ; and it is now too late for the plaintiffs to contend, that that release did not work an injury to the sureties. By that means the principal debtor was enabled to escape with his property beyond the jurisdiction of the courts of this state, and thus defeat any effort of the sureties to secure themselves, and on principles of good faith and common honesty, must be deemed to have exonerated the sureties. If the defendant had no interest in the attachment, so that by releasing it he was discharged, surely he could have no interest in the new note taken by the plaintiffs for the *same* property ; and they might have discharged it without any consideration, or they might have received the amount and appropriated it to the payment of any other debt : but such a proposition would have been too absurd to have claimed a moment's consideration. The very admission of

WASHINGTON
March,
1832.

Montpelier b'k.
vs.
Dixon.

the plaintiffs, that *four hundred dollars* have been collected on this last note, as a part payment of the note in suit, is an admission that the defendants had an interest in that note, and the direct inference from which is, that the defendant must have had an interest in the cattle, for the discharge of which the note was taken. From the facts presented by this case, we may draw a safe conclusion of the value which the plaintiffs put upon this attachment. The plaintiffs in October, 1826, becoming suspicious of the solvency of Gideon O. Dixon, the principal debtor, undertook to secure themselves, and accordingly sued out an attachment against all the signers of the note, but had it served *only* on Gideon O. Dixon, by attaching property of his to the value of $2000 or more.    From these facts we apprehend the Court will be satisfied that the plaintiffs considered their debt as perfectly secured by such attachment.    If such was the fact, any release of that security afterwards, without the consent of the sureties, would discharge them.    On receiving information of this attachment, the defendant might well have rested satisfied, if he had before felt himself insecure.    To have then paid the note and seized the cattle, would not have made the debt any more secure against the principal.    And he could not have filed a bill in chancery to compel the plaintiffs to proceed in the collection of their debt against the principal ; for they had already commenced it ; and after having deprived the defendant of this right, can the plaintiffs be permitted in a court of justice to aver, that discharging that attachment and releasing the property, was no injury to the defendant ?

If the facts shown are sufficient to discharge the defendant from his liability in a court of chancery, he is equally entitled to relief from this Court ; for as *Thompson, J.*, said, in delivering the opinion of the court in the *People* vs. *Janson, (7 J. R. 332,)* " whatever would exonerate the surety in one court, ought also in the other."    *The facts being ascertained, the rule of law must be the same in this Court as in a court of chancery.—Vide* 10 *J. R.* 587 ; 13 *ib.* 174 ; 2 *Sw. Dig.* 152.    When a guaranty is not under seal, there is no technical rule which restrains a court of law from doing justice ; still less is there any which constrains the court to compel payment by a surety, who in justice and equity has been discharged by the conduct of the creditor.—3 *Stark. Ev.* 1390.    We are aware that in *Fulton* vs. *Mathews, (15 Johns. Rep.* 433,) it appears from the note of the case, that " a surety is not discharged by the plaintiff's giving time to the principal debtor, or even by his discharging a suit commenced against the prin-

cipal, without the privity or consent of the surety. But from the
facts in that case, it appears, that at the time the suit was discharg-
ed, the principal was insolvent ; and *Spencer, Ch. J.*, very justly
remarks in deciding that case, that to amount to a discharge,
" it ought to be put beyond a doubt, that the surety is injured by
the delay ; that is, that the principal was solvent and able to pay
the debt at the time the suit was discharged." This we appre-
hend amounts to the same as saying, that if the principal was
solvent at the time, and afterwards became insolvent, it would
amount to a discharge ; and that is the doctrine contended for
in the present case. The case of *King* vs. *Baldwin*, so much re-
lied upon by the plaintiffs for the able opinion given by the Chan-
cellor, is not opposed to the case at bar. The question decided
there was, that *mere delay* to sue the principal, after a request by
the surety, would not discharge him. In that case the *promisee*
was merely passive ; and the Chancellor says, " there is no *proof*
or *pretext* that Baldwin, by any agreement with Fowler, enlarged
the time of payment, or *impaired* the rights of the plaintiff in his
relation as surety. Had the plaintiff, in the case at bar, remained
*passive*, the defendant might have had no reason to complain, but
after having awakened public attention to the failing circumstan-
ces of the principal by attaching property sufficient to satisfy their
debt, they, by a *new agreement* with the principal, released such
property and discharged their attchment, when they were bound
by every principle of equity and justice to retain such property
for the satisfaction of their debt. A creditor, who has his debt
secured by a surety,and has also,or takes afterwards,property from
the principal debtor, as a security or pledge for his debt, is bound
to keep the property for the benefit of the surety as well as him-
self ; and if he surrenders the property without the knowledge and
consent of the surety, he loses his claim against the surety to the
amount of the property given up. This principle was fully estab-
lished by the supreme court of Massachusetts in *Baker* vs. *Briggs*,
(8 *Pick*. 122,) and in delivering the opinion of the court, *Parker*,
*Ch. J.*, further said, " If the plaintiff had in his possession per-
sonal property of the principal, which he held as security for this
note, and suffered it to pass back into his hands, without the knowl-
edge or consent of the surety, the latter would thereby be dis-
charged of his liability ; for such conduct would be a fraud upon a
surety. It is said that a creditor may exercise his discretion and
surrender one species of security for another, or, if he has an ex-
cess of security, he may give up a part. Undoubtedly he may,

Washington,
March,
1832.

Montpelier b'k.
vs.
Dixon.

but it is at his own risk. If the part he retains fails, the loss ought to be his own. Fair dealing requires that he should consult the safety of the surety when he has the means in his hands.

WILLIAMS, J.—The only question presented in this case is, whether the dissolution of the attachment made by the plaintiffs on the property of Gideon O. Dixon was a discharge of the other signers to the note on which this suit is brought? The county court so decided ; and if their decision is correct, the plaintiffs have no further claim on the defendant. If it was not, there must be a new trial, as there are no other facts established which will entitle the defendant to retain the verdict. This presents the inquiry as to the rights and duties of a plaintiff or creditor, in a case similar to the present. The first and most natural view of the case would be, that as the plaintiffs parted with their money on the credit of all and each of the signers of the note, they might look to each for satisfaction, and would not lose their claim against any, until they were fully repaid the amount advanced, and that they ought not to be compelled to recognise the defendants, in the relation of principal and surety ; but might in any of their negociations treat all the signers as principals. We are inclined, however, to waive the consideration of this question at this time on account of the sickness of one of our brethren, and the absence of another, as we are all agreed on another point, that there must be a new trial.

Considering Gideon O. Dixon as the principal to the note on which the suit is brought, and the defendant and other signers as sureties, we are to enquire whether the surety has been discharged from his liability. Certain principles borrowed from the civil law, and from the courts of equity, have been adopted by the courts of common law, as to the duties of the creditor towards the surety, and as to those acts of the creditor, and transactions between him and the principal which will discharge the surety. These principles we should endeavour to draw from the points decided in the cases. The opinions expressed by judges or chancellors in deciding a case, and expressions falling from them in elucidating their views, are frequently cited by elementary writers as the law which was established in those cases, or the principle to be drawn therefrom ; and many of these expressions and opinions have been cited in this argument. I apprehend, however, that it is easier to reconcile the *several decisions* which have been made, than it is to establish a system founded on those opinions and expressions. Most of the authorities which have been read

in this case, were read and examined in the case of *Hubbard* vs.

*Davis,* 1 *Aikens,* 296 ; and some of them, at least, were over-ruled. The case of *Rees* vs. *Berrington,* 2 *Vesey, jr.* 540, and the cases cited in the marginal notes to that case, and the case of *English* vs. *Darling,* 2 *Boss. & Pull.* 61, certainly establish

this principle ; That, when the creditor, without consent of the surety, gives time to the principal by a contract which, in the language of *Gibbs, C. J.,* in *Orms* vs. *Young, Holt,* 84, ties up his hands, the surety is discharged, and this for two reasons. 1st. It is varying the terms of the contract, by extending the time for its fulfilment ; and no surety is ever charged beyond the terms of his contract. A surety might be willing to be holden for a limited time, but unwilling to be holden for a longer period. 2d. Because the surety may in a court of equity compel the creditor to sue the principal debtor at law, under such regulations as the court shall make, so as not to impair his security or delay his debt, which the creditor cannot do, if he makes a contract with the principal for delay. We think it is equally well established, that a delay or neglect of the creditor to sue the principal, though urgently requested thereto by the surety, is not a discharge of the surety. The surety may pay the debt, and pursue the principal for his own benefit. Further, the surety, on paying the debt of the principal, is entitled to be put in the place of the creditor, and may avail himself of all, or any, of the collateral securities, means, or remedies, which the creditor has for enforcing payment against the principal, and may have them assigned to him, under such terms as a court of chancery may order. And further, as to any other collateral securities, which the creditor may have at the time the surety entered into the obligation, and which may have had an influence in inducing the surety to become obligated, the creditor must act with good faith, and not discharge them to the prejudice of the surety.

But inasmuch as the creditor is not compelled to institute a suit at the request of the surety, so he may discontinue any suit by him instituted for his own benefit, and without any such request, if he acts with good faith, and with a view to his own interest. And, although it is commenced by attachment, with a view of enforcing a more speedy payment, yet, if it was commenced without the request or knowledge of the surety, so it may be discontinued, or other security may be received, as a substitute for the attachment, without consulting the surety, if the creditor acts with good faith. The cases of *Fulton* vs. *Mathews and Wedge,* 15 *Johns.* 433,

and *Bellows* vs. *Lovel*, 5 *Pickering*, 307, countenance this opin-
ion.

We have had no opportunity of seeing the cases decided in
Kentucky, *Jones* vs. *Bullock*, 2 *Bibb*, 467, and *Baird* vs. *Rice*,
1 *Call*; 18, nor the case in Pennsylvania, *Commonwealth* vs.
*Vanderslice and others*, 8 *Serg. & Rawle*, 452, except what we
find in the note to *Starkie's Evidence*, 3 *Vol.* 1390; and it would
be unsafe to rely on them, unless we could learn, from the reports
themselves, under what circumstances the cases appeared to the
court, and what was the point decided. In the case of *Nisbit* vs.
*Smith*, 2 *Brown*, 579, the creditor had commenced a suit at the
urgent request of the surety, and then had compromised the suit,
and given a time to the principal of three years beyond the origin-
ally stipulated time; and under these circumstances the surety
was released.

In the case of *Law* vs. *East India Company*, 4 *Vesey, jr.* 824,
nothing was determined; but the question, as to the liability of
the surety, was left to be settled in a suit directed to be brought
thereafter. We find nothing there, nor in any of the cases which
have been read, which militates against the opinion we have
formed in this case. We are all of opinion that the dissolving
the attachment made by the plaintiffs on the property of Dixon, was
no discharge of the sureties of Dixon. The attachment was
commenced for their own benefit, and not at the request of the de-
fendant and the other signers. If that suit had been pursued, they
might have attached the personal property of either of the other
signers, and collected their debt of them; and would not have
been compelled in chancery to pursue the attachment against G.
O. Dixon, unless at the request of the defendants, and on being
fully indemnified for any costs or liabilities, if there were any
doubt as to the ownership of the property, and in such a manner that
they should not be delayed in the collection of their debt. It was
discontinued in good faith, and under such circumstances as might
reasonably have been expected at the time would have ensured a
more speedy payment from G. O. Dixon, and thus have relieved
the sureties altogether. It was not transacting the business of the
surety, as has been said in the argument; but was managing
their own business, for their own benefit, not at the request of the
surety. It was commencing and discontinuing a suit in a manner
which the plaintiffs might reasonably suppose would coerce the
payment of the debt by G. O. Dixon. If the defendant or the
other signers were dissatisfied, they might have paid the note, and

sued G. O. Dixon, and attached the same property, or have re-quested and received of the plaintiffs the benefits of that attachment on giving them such indemnity, as might have been equitable.

WASHINGTON
March,
1832.

Montpelier b'k.
vs.
Dixon.

In considering this question in this view, it cannot have escaped the attention, how very embarrassing it is to compel the holder of a joint and several note, more particularly a bank, to recognise the relation of principal and surety in the signers of the note; and there are some authorities which tend to establish the principle, that they are not. But the case does not require of us to consider this question; and for the reasons already suggested it is left open for a decision when a case is presented which requires it.

The judgement of the county court is reversed and a

New trial granted.