Mason, Adm'r, etc., and another vs. Pierron, imp.

Mason, Administrator, etc., and another, Appellants, vs. Pierron, imp., Respondent.

*April 9 — April 28, 1885.*

Suretyship: Fraudulent Conveyance. *(1) Contribution: Subrogation.    (2) Setting aside conveyance by surety: Insolvency: Execution: Pleading.*

1. One of several sureties who has paid a judgment against all may maintain an action in equity to enforce contribution from his co-sureties, and may be subrogated to all the rights of the creditor under the judgment.

2. A judgment was rendered against the sureties of one P. but not against P. himself, he having shown a discharge in insolvency. The judgment was paid by certain of the sureties, and in an ac-

tion to enforce contribution from a co-surety it was sought to obtain a judgment against him for the amount which he ought to contribute, and also to subject to the payment of such judgment, or to the lien of the original judgment, land which the defendant surety had conveyed to P. before the original judgment was docketed so as to become a lien thereon, such conveyance to P. being alleged to be fraudulent. P. was also made a party defendant. *Held:*

(1) The complaint in such action, in order to state a cause of action against P. must show that the defendant surety is insolvent, or some necessity for resorting to such land to satisfy the judgment which might be obtained against such surety.

(2) But it is not essential to the maintenance of the action against P. that an execution against the defendant surety should have been returned unsatisfied.

APPEAL from the Circuit Court for *Fond du Lac* County. This is an appeal by the plaintiffs from an order sustaining the demurrer of the defendant *Pierron* to the complaint. The case made by the complaint is this: June 21, 1882, the city of Fond du Lac recovered judgment for over $37,000 against John Hughes, James Gaynor, Charles B. Bartlett, Robert A. Baker, the plaintiff *M. D. Moore,* and the defendant Leon Lallier. The action was upon the official bond of the defendant *Pierron* as treasurer of said city, in which the persons above named were sureties. *Pierron* was also a defendant in the action, but he pleaded and established a discharge from his debts in insolvency proceedings under ch. 179, R. S., and the judgment did not go against him. Thomas Mason, the plaintiff *Mason's* intestate, was also a surety in the bond and made a defendant, but died pending the action. A transcript of such judgment was duly docketed in the office of the clerk of the circuit court of Fond du Lac county, July 13, 1882. All the defendants in that action against whom the judgment was rendered, except Baker, appealed to this court. The judgment was affirmed as to all of them except Hughes, who was held not liable on the bond. 58 Wis. 170.

September 13, 1883, an execution was duly issued on the judgment, and during that month and the month of November following, Gaynor, *Moore*, and Bartlett paid the judgment. Thereupon Gaynor and Bartlett sold and transferred to *Moore* all their claim and demand against the defendant Lallier for contribution. Within twenty days after such payments were made, *Moore*, Gaynor, and Bartlett each filed with the clerks of the circuit courts of Rock and Fond du Lac counties, respectively, the affidavit and claim prescribed in sec. 3024, R. S., in order to preserve the lien of the original judgment upon the lands of Lallier in Fond du Lac county, and to enforce contribution of his share of the judgment debt. In April, 1884, the plaintiff, the administrator of the estate of Thomas Mason, deceased, paid *Moore*, Gaynor, and Bartlett one fourth of the sum paid by them upon the judgment, by way of contribution due them from said estate. Baker is wholly insolvent, is not a resident of this state, and has paid nothing upon the judgment or as contribution to his co-sureties. Neither has the defendant Lallier. At the time the judgment was docketed in Fond du Lac county, Lallier owned certain specified tracts of land therein, subject to execution, of the value of $2,500.

The case against the defendant *Pierron*, stated in the complaint, is as follows: After alleging that before the insolvency proceedings were instituted *Pierron* was the owner of certain described real estate in the city of Fond du Lac, of the value of $5,000, one parcel of which was an undivided one-half of the north 20½ feet of lot 13, the complaint proceeds as follows:

"Before taking the said proceedings in insolvency, the said *Pierron*, on the 9th day of June, 1881, conveyed the said lands and premises to the defendant Leon Lallier by deed, which was recorded in the office of the register of deeds for Fond du Lac county, on the 15th day of June, 1881, in volume 92 of Deeds, on page 490; and that the said lands

and premises were not scheduled by said *Pierron*, or turned over to his assignee, as any part of his assets; that on the 6th day of July, 1882, and after said *Pierron* had been discharged from liability in the said action brought by the city of Fond du Lac, he, the said Lallier, pretended to reconvey all of the said land and premises back to said *Pierron*, including the whole of said N. 20½ feet of said lot 13, by deed, bearing date on that day, and recorded in the said register's office, July 7, 1882, in volume 97 of Deeds, on page 530.

"Upon information and belief the plaintiffs further allege that the said transfer from *Pierron* to Lallier was without consideration, was a mere sham and pretense, and was made for the purpose of secreting and covering up the said property of said *Pierron* while he took his said insolvency proceedings, and to prevent its being applied upon his said defalcation, or going for the benefit of his said bondsmen; that the same was a fraud, contrary to the true intent of chapter 179 of the Revised Statutes, and was participated in by said Lallier; that the reconveyance from Lallier back to *Pierron* was without consideration, and was a part of the same scheme to keep the said above-described property, including the whole of said N. 20½ feet of said lot 13, from being applied upon the said judgment, or going to the benefit of said bondsmen; that in his said insolvency proceedings said *Pierron* stated under oath that he had no other indebtedness except the said indebtedness of $37,160.15 to the city of Fond du Lac."

The specific relief demanded is that the defendant Lallier be decreed to pay the plaintiffs, respectively, the amount he ought to pay by way of contribution; that the plaintiffs be subrogated to all the rights of the city of Fond du Lac, under the judgment which they have thus paid; and that the deed of July 6, 1882, from Lallier to *Pierron*, be adjudged fraudulent and void as to the plaintiffs, and set aside and annulled; and the lands therein described be subjected

to the lien of such judgment, and to sale on the execution issued thereon, to the amount found due from Lallier to the plaintiffs. There is also a prayer for general relief.

The demurrer of *Pierron* was interposed upon several grounds, only two of which are relied upon. These are (1) that several causes of action have been improperly united therein; and (2) that the complaint does not state facts sufficient to constitute a cause of action.

*Geo. E. Sutherland,* for the appellants, argued, among other things, that a creditor may sue his debtor for damages, and in the same action seek to set aside fraudulent conveyances by the debtor and make the property conveyed liable to the payment of his claim. *Smith v. Rumsey,* 33 Mich. 183; *Cassaday v. Anderson,* 53 Tex. 527; *McAnally v. O'Neal,* 56 Ala. 299; *Combs v. Watson,* 32 Ohio St. 228; *Mebane v. Layton,* 86 N. C. 571; *Blake v. Van Tilborg,* 21 Wis. 672. It is not necessary to allege or prove, as a prerequisite of the right to set aside a fraudulent conveyance, that the debtor did not retain sufficient property to pay his debt. *Fox v. Moyer,* 54 N. Y. 131; *Rounds v. Green,* 29 Minn. 139; *Jennings v. Howard,* 80 Ind. 214; *Flannagan v. Donaldson,* 85 id. 517; *Gormley v. Potter,* 29 Ohio St. 597; *Carpenter v. Roe,* 10 N. Y. 227; *Early v. Owens,* 68 Ala. 171; *Leonard v. Forcheimer,* 49 id. 145; *Westerman v. Westerman,* 25 Ohio St. 500; *Warren v. Makely,* 85 N. C. 12. This branch of the action proceeds under ch. 106, R. S., and it is entirely immaterial whether the grantor with fraudulent intent retained other property or not. See *Laughton v. Harden,* 68 Me. 208; *Pickett v. Pipkin,* 64 Ala. 520; *Goshorn v. Snodgrass,* 17 W. Va. 717; *Hedrick v. Walker,* id. 916; *Schmidt v. Opie,* 33 N. J. Eq. 138; *Matthai v. Heather,* 57 Md. 483; *David v. Birchard,* 53 Wis. 492.

*Edward S. Bragg,* of counsel, for the respondent:

1. The complaint states two causes of action that cannot be joined: (1) an action at law by one surety against another

to establish the liability and extent of liability of the defendant surety; (2) an action in equity to enforce the liability after it shall have been determined in the action at law. 2. The complaint fails to state any cause of action against the defendant *Pierron*. Until a creditor has a judgment, or has acquired a specific lien upon the property the title of which he seeks to attack, he cannot maintain an action to set aside such title. Wait on Fraud. Conv. § 73, and note 2; *Hyde v. Chapman*, 33 Wis. 391, and cases cited; *Adsit v. Butler*, 87 N. Y. 585.

Lyon, J. Actions to enforce contribution between sureties, and to subrogate a surety who has paid the debt of the principal debtor to the securities and rights of the creditor, are constantly sustained by courts of equity, and have been from the earliest times. In so far as this action seeks to compel the defendant Lallier to reimburse the plaintiffs such sum as, between the sureties, he equitably ought to pay upon the judgment, it was properly brought as an equitable action, although courts of law have a very extensive concurrent jurisdiction over the same subject. The right of the plaintiffs to be subrogated to the remedies of the judgment creditor is, also, clearly a matter cognizable by a court of equity.

The extent to which subrogation may be decreed has been a matter of some conflict between the courts of this country and of England. It was formerly held in England, following the Roman law, that a surety subrogated to the rights of a creditor had precisely the same rights the creditor had, and stood in his place; but in later times the rule has been restricted in that country, and it is there now held that the right of subrogation extends only to securities other than the obligation or instrument which is the evidence of the debt. Thus, if the debt be evidenced by a bond, payment by one of two sureties of the whole debt cancels the bond,

or if it be upon a judgment, such payment cancels the judgment, and the surety so paying becomes a mere general creditor of his co-surety, to whose demand none of the peculiar incidents of a debt upon specialty or judgment adheres.

The courts of this country, however, have very generally adhered to the ancient rule, and hold that although the lien or obligation be extinguished at law by the payment of the debt, yet, for the benefit of the surety, it continues in equity in full force. This is believed to be the more just and reasonable rule. The cases which illustrate the above propositions are very numerous in both countries. A great many of them will be found cited in Story's Equity Jurisprudence, in the notes to sections 492, 493, 495, 496, 499, *a, b, c;* 3 Pom. Eq. Jur. §§ 1418, 1419, and notes.

The American rule is fully recognized in our statute, which prescribes the procedure by which one of several judgment debtors, who has paid more than his just share of the judgment, may keep the judgment alive, and retain the lien thereof upon the lands of the other judgment debtors, for the purpose of enforcing contribution by the latter. R. S. secs. 3021–3024.

We are of the opinion, therefore, that the complaint states an equitable cause of action against the defendant Lallier. It remains to be determined, however, whether the complaint states such a cause of action against the defendant *Pierron*. The judgment obtained by the city in the original suit did not go against *Pierron;* hence it never became a lien upon his real property. The deed by which Lallier reconveyed to him the property which the plaintiffs seek to reach in his hands was executed and recorded before the judgment was docketed in Fond du Lac county. There is no averment in the complaint that Lallier is insolvent, or that the demand of the plaintiffs against him could not be

collected on execution without resorting to this property, or that any execution has been returned unsatisfied. The question is, therefore, Can the plaintiffs maintain an action against *Pierron* to cancel his conveyance from Lallier, and subject the land to the claim of the plaintiffs, until they exhaust all legal remedies to collect it of Lallier? or, at least, until they show that he is insolvent?

In *Hyde v. Chapman*, 33 Wis. 391, the plaintiff was a judgment creditor of B. A. Chapman. Before the judgment was obtained, the latter had made a voluntary conveyance of certain real estate to James A. Chapman. An execution had been issued upon the judgment, but before the return thereof the plaintiff commenced his action against both the Chapmans to have such conveyance set aside as fraudulent, and to subject the land to the lien of the judgment. On these facts the present chief justice, delivering the opinion of the court, says: " Under these circumstances it is difficult to say that the plaintiff ever acquired any lien upon the property. And if he did not, the law seems to be well settled that this right to relief depends upon the fact of his having exhausted his legal remedies without being able to obtain satisfaction of his judgment. The issuing of an execution, and its return unsatisfied, was essential to his right to maintain this action. *Beck v. Burdett*, 1 Paige, 305; *Gates v. Boomer*, 17 Wis. 455; *Cornell v. Radway*, 22 Wis. 260."

In *Cornell v. Radway*, cited by the chief justice, the judgment had become a legal lien upon the property described in the fraudulent conveyance before such conveyance was executed, and it was held that in such a case an action might be maintained to cancel such conveyance without the return of an execution unsatisfied. The case is entirely consistent with that of *Hyde v. Chapman*. *Gates v. Boomer*, 17 Wis. 455, is like the present case,— the fraudulent con-

JANUARY TERM, 1885.    247

Mason, Adm'r, etc., and another vs. Pierron, imp.

veyance antedating the judgment. But there an execution was returned unsatisfied before the equitable action to avoid the fraudulent deed was commenced.

The only case determined by this court, cited as sustaining the opposite doctrine, is that of *Blake v. Van Tilborg*, 21 Wis. 672. In that case the plaintiff intrusted the defendant with his money, with which the defendant fraudulently purchased and paid for certain lands, and caused a portion of such lands to be conveyed to one of his codefendants, and a portion to the other, neither of them paying any consideration therefor. The plaintiff sought in the action to obtain these lands in which his money had thus been invested. It was held that the complaint was not multifarious. The distinction between that action and the present one is obvious, and requires no elucidation.

There are cases in this court, however, which apparently approach nearer sustaining the position of the learned counsel for the plaintiffs than does that of *Blake v. Van Tilborg*. One of these is *Damon v. Damon*, 28 Wis. 510, in which it was held that a wife suing for a divorce from her husband, and for alimony or a division of her husband's estate, might properly join a fraudulent grantee of the husband, of property purchased with the separate estate of the wife, as a defendant to the action. The judgment went upon the general ground that it was necessary to ascertain the extent of the husband's estate before the court could intelligently fix an allowance for alimony, and that it was also necessary to clear the property of the fraudulent conveyance for the purposes of a division of the estate, and a vesting in the wife of the title to the portion thereof adjudged to her. The same rule was applied to a different state of facts, but involving the same principle, in *Gibson v. Gibson*, 46 Wis. 449. But in *Varney v. Varney*, 54 Wis. 422, the court refused to apply the rule because it was unnecessary for the protection of the plaintiff. In the latter case, Mr. Justice

TAYLOR states the rule as applicable to judgment creditors to be that the alleged fraudulent conveyance can only be set aside when there is not enough property remaining in the hands of the judgment debtor to satisfy the judgment, and he says further that, " as a general rule, equity will not interfere to aid the judgment creditor to set aside a conveyance as fraudulent until it is shown that the defendant has no other property with which to satisfy the same."

Considering the special grounds upon which the judgments in the divorce cases were rested, it is obvious that there is no conflict between those cases and *Hyde v. Chapman*, but they all may well stand together.

Divested of all extraneous circumstances, this is a case in which the plaintiffs seek to obtain a judgment for a certain amount of money against the defendant Lallier, and to subject certain lands, to which the defendant *Pierron* obtained the legal title by conveyance from Lallier before the original judgment became a lien upon them, to the payment of the judgment to be obtained herein, or to the lien of the original judgment; and this without averring the insolvency of Lallier, or any necessity for resorting to such lands to satisfy any judgment that may be obtained against him. It seems very clear to us that the complaint, so far as *Pierron* is concerned, is fatally defective in that it thus fails to show a necessity for resorting to the lands conveyed by Lallier to him for the purpose of enforcing contribution against Lallier. It was said in the argument that the circuit court sustained the demurrer because of such omission.

This being an action in equity to determine the sum Lallier ought to pay his co-sureties, and to enforce payment thereof, it is unlike a creditors' suit, which is usually brought to enforce a liability already ascertained in an action at law. Because of this difference in the two actions, we think the strict rule which prevails in creditors' suits, applied in *Hyde v. Chapman*, should not prevail here, and hence that the

return óf an execution unsatisfied against Lallier is not essential to the maintenance of this action against *Pierron*. Had the insolvency of Lallier been alleged, the complaint would have been sufficient as to both defendants.

