Nelson v. Webster.

---

EDWARD NELSON V. J. R. WEBSTER, SHERIFF, ET AL.

FILED JULY 13, 1904.   No. 13,576.

1. Judgment: PRINCIPAL AND SURETY. A defendant, who had been found to be a surety by the judgment in the original action upon a promissory note, paid the amount of the judgment and took an assignment of it to himself for the purpose of enforcing it against his principal. *Held*, That, as between the parties, the judgment had not been satisfied and extinguished, and that the surety was entitled to collect the same by the issue of execution against his principal.

2. ———: CONCLUSIVENESS. Where in an action against a principal and surety, that issue has been presented and a finding made under section 511 of the code, the relation of the parties as principal and surety has been conclusively determined, and need not be relitigated in an action to subrogate the surety to the rights of the creditor against the principal.

ERROR to the district court for Saunders county: BENJAMIN F. GOOD, JUDGE. *Affirmed.*

John H. Barry, for plaintiff in error.

V. L. Hawthorne, contra.

LETTON, C.

This is an action of replevin brought by Edward Nelson, plaintiff in error as plaintiff, against J. R. Webster, Sheriff of Saunders county, and Peter Johnson, defendants in error as defendants, in the district court for Saunders county. The case was tried to the court upon an agreed stipulation of facts which are substantially as follows: That on March 29, 1897, the Farmers & Merchants Bank recovered a judgment against Friberg, Nelson and Johnson in the sum of $154.25 and costs taxed at $11.55 upon a promissory note signed by said parties; that the evidence, findings and judgment of the court show that Peter Johnson signed the note as surety; that afterwards Peter Johnson paid the full amount due upon the judgment of the plaintiff by his attorney, S. H. Sornborger, and the following record was made upon the court docket upon which the judgment appears:

"April 8, 1897. In consideration of the payment of $163.81 by Peter Johnson, surety of the plaintiff, this judgment as against Andrew Friberg and Edward Nelson is hereby assigned and set over to said Peter Johnson to proceed herein in plaintiff's name or otherwise against said Friberg and Nelson but not at plaintiff's costs. Farmers & Merchants Bank, by S. H. Sornborger, its attorney." That a transcript of the judgment and assignment was filed in the district court for Saunders county and an execution issued thereon, by virtue of which execution the defendant Webster as sheriff seized the property described in plaintiff's petition which is of the value of $690; that Peter Johnson, the defendant, caused the execution to issue claiming to own the judgment by virtue of having paid the same and receiving the assignment thereof. Upon the pleadings and evidence, judgment was rendered for the defendant, and the plaintiff prosecutes error to this court.

The plaintiff in error contends, first, that Johnson, having paid and satisfied the judgment, it was extinguished and no longer remained a valid judgment against any one;

second, that one of several judgment defendants cannot become the assignee of the judgment, as against the other defendants.

It is admitted by the plaintiff in error that had Johnson, after paying the judgment, filed his petition containing the proper averments in a court having jurisdiction against Nelson and Friberg, his codefendants, had brought them into court and sustained the allegations of his petition with proper proof, he would have been subrogated to the rights of the bank. But it is contended that he cannot summarily acquire the right to enforce the judgment against his codefendants, and determine his rights and the rights of Nelson without giving Nelson his constitutional right to be heard in his own defense. The defendants in error upon the other hand contend that the fact that Johnson was only a surety is *res adjudicata*, that payment to the bank and the assignment of the judgment to him operate as a transfer of the judgment, and that thereby he was subrogated to all the rights and remedies possessed by the bank at that time, and can enforce the judgment as to his principal as fully as the bank could have done. In the original action in the county court, issues were tendered upon the question of whether the relation of principal and surety existed as between Johnson and his codefendants; evidence was taken and a finding and judgment was had upon such issue, which determined as between the parties the fact that Johnson was merely a surety. So that the status of the parties as principal and surety was conclusively determined before the payment of the judgment and its assignment to Johnson took place.

By section 511 of the code it is provided that "in all cases where judgment is rendered in a court of record within this state, upon any other instrument of writing, in which two or more persons are jointly and severally bound, and it shall be made to appear to the court, by parol or other testimony, that one or more of said persons so bound signed the same as surety or bail for his or their codefendant, it shall be the duty of the clerk of said

court, in recording the judgment thereon, to certify which
of the defendants is principal debtor, and which are sure-
ties or bail." By the provisions of this section, the ques-
tion of whether the parties stand in the relation of princi-
pal and surety may be as effectually litigated and settled
in the original action, as could be done under the common
law in a subsequent action in which the surety sought
exoneration. One of the principal objects, therefore, of
the surety's suit had been realized by the adjudication in
the original suit that Johnson stood in the relation of
surety to his codefendants.

It is further established that the surety has paid the
judgment creditor the full amount of the judgment and
costs and obtained an assignment thereof. Under the
pleadings in this case no issue is tendered that could be
litigated in an action for exoneration, other than the alle-
gation in the reply that Nelson was only a surety upon
the obligation and not a principal, but this issue as we
have seen has been adjudicated and settled as between these
parties.

Under the civil law not only is the surety entitled where
he pays the whole debt to the benefit of all the collateral
securities taken by the creditor, "but he is also entitled to
be substituted, as to the very debt itself, to the creditor
by way of cession or assignment. And upon such cession
or assignment   *   *   *   the debt is, in favor of the
surety, treated not so much as paid, as sold; not as extin-
guished, but as transferred with all its original obligatory
force against the princpal." 1 Story, Equity Jurispru-
dence (13th ed.), section 500. And this it seems was the
earlier doctrine at common law. See cases cited in 1
Story, Equity Jurisprudence (13th ed.), section 499. Mr.
Story, however, states that the doctrine is now established,
that the surety has no such right to be enforced in equity
and that he cannot insist upon any assignment, upon the
ground that by the payment of the debt the debt has be-
come extinguished, but he comments upon this doctrine
as follows:

"It is observable that the whole of this reasoning proceeds upon the ground that by the payment by the surety the original debt is extinguished. Now that is precisely what the Roman law (as we shall presently see) denied; and it treated the transaction between the surety and the creditor according to the presumed intention of the parties to be not so much a payment as a sale of the debt. 1 Domat Civil Law, Book 3, tit. 1, sec. 6, art. 1; *post,* sec. 500 and secs. 635, 636, 637. It is not wonderful that courts of equity, with this enlarged doctrine in their view, which is in entire conformity to the intention of the parties as well as to the demands of justice, should have struggled to adopt it into the equity jurisprudence of England. The opposing doctrine is founded more on technical rules than on any solid reasoning founded in general equity. In truth courts of equity in many cases do adopt it and act upon it." (Sec. 499*d.*)

It will be observed that in the case at bar, the purpose and object of the usual action in equity, by which the surety seeks to be subrogated to the rights and remedies of the creditor, has been effectually accomplished by the assignment of the judgment. The object of the equitable action was to procure the right to the surety who had paid the debt, to have the advantage and benefit of every lien, claim or security which the original creditor had against the principal debtor. We think that the equitable doctrine of the civil law has become the doctrine of the majority of the American courts.

In *Townsend v. Whitney,* 75 N. Y. 425, the whole subject is examined and it is said, that it has not always been easy to define the cases in which subrogation could be had and the English authorities are not all consistent, and in that case it was held that where a judgment has been rendered upon the surrogate's decree against an administrator and the judgment has been paid by one of the sureties he may have the decree assigned to himself or to some one else for him and enforce it by attachment against the administrator.

In a leading case in New Hampshire, there is an extended discussion of the legal principles involved in this case in which the language used by the writer of the opinion is so apt that we quote from it at length. The court say, by Bell, J.:

"The general principle, that a surety is entitled in equity, to be subrogated to all the securities which the creditor holds against the principal, is everywhere admitted. (Citing cases.) So it is beyond question that the surety, paying the debt, may stipulate for an assignment of all the collateral securities of the creditor against the principal, and such assignment will be protected in courts of law, as well as in equity. (Citing cases.) It is equally clear, that the payment of a debt by any person who is liable to its payment is a discharge of it. It is thenceforward *functus officio,* and cannot be enforced against any person, who is liable to its payment in the same degree as the party paying. *United States v. Preston,* 4 Wash. (U. S. C. C.) 446. So payment of a judgment, or execution, by either of the judgment debtors, discharges the execution, and is a satisfaction of the judgment. (Citing cases.) And, as a general rule, the same result follows from a payment made by any other person; and any agreement made by the party making the payment with the creditor, that the execution shall not be discharged, or returned satisfied, in order that the party paying may collect upon it a part or the whole of the judgment debt from another of the judgment debtors, will be entirely nugatory. * * * But the rule, that a surety may take an assignment of any security for the payment of the debt, which is held by the creditor, unavoidably implies an exception to the general rule that payment of a debt by a codebtor discharges the other codebtors, whether the debt rests in contract merely, or is merged in a judgment. * * * We apprehend, therefore, that the rule, that payment by a codebtor discharges the debt, must be subject to this exception; if the codebtor, making the payment, is a surety, the debt will be holden undischarged, so far as

is necessary to preserve and give effect to the collateral securities against the principal, assigned by the creditor to the surety, either voluntarily, or by a decree of a court of equity.   *   *   *   The payment, for most purposes, discharges the debt, but does not so discharge it, as to destroy the security of the surety; but a judgment may be entered up, to be levied on the property attached, or, if judgment be rendered, a levy on that property may be effectually made, though the execution would be enjoined, or set aside, if used for any other purpose." *Edgerly v. Emerson,* 23 N. H. 555, 55 Am. Dec. 207.

The American cases on this subject are collected and distinguished in 24 Am. & Eng. Ency. Law (1st ed.), 204-206, and notes.   See, also, *Lidderdale v. Robinson,* 12 Wheat. (U. S.) 595; *Pott v. Nathans,* 1 Watts & Ser. (Pa.) 155, 37 Am. Dec. 456; *Searing v. Berry,* 58 Ia. 20, 11 N. W. 708; *Bank of Montpelier v. Dixon,* 4 Vt. 587, 24 Am. Dec. 640; *Mason v. Pierron,* 63 Wis. 239, 23 N. W. 119; *Mitchell v. DeWitt,* 25 Tex. Supp. 180, 78 Am. Dec. 561.

The case at bar is easily distinguished from the cases of *Potvin v. Meyers,* 27 Neb. 749, and *Henry & Coatsworth Co. v. Halter,* 58 Neb. 685, cited by plaintiff in error.   In each of these cases, the defendant who paid the judgment was apparently primarily liable for the debt and it was not ascertained by the judgment that he stood in the relation of surety to the principal debtor.

In *Wilson v. Burney,* 8 Neb. 39, the facts were that Humphrey Brothers had commenced an action against Horace Taylor, E. A. Berry and the defendant Burney, and recovered a judgment against Taylor as principal and Berry and Burney as sureties. An affidavit for garnishment was filed against the firm of Wilson & Phillips, summons issued thereon, the answer of the garnishees taken and an order made that the garnishees pay the sum of $85 into court.   After this order was made an execution was issued on the original judgment and the amount due thereon was paid by Burney, who took an assignment of the judgment to himself and brought an action under the

judgment against Wilson & Phillips as garnishees. Judgment was rendered in his favor and Wilson & Phillips prosecuted error. This court held, the opinion being written by Chief Justice MAXWELL:

"The principle is well settled that upon the payment of the debt by the surety, he is entitled to the securities held by the creditor against the principal debtor, and to stand in his shoes, and it can make no difference that the security is in the form of an order upon garnishees to pay money into court. It follows that the defendant, being entitled to be subrogated to the creditor's rights in the premises, the judgment of the court below must be affirmed."

The only difference in the facts between this case and the case at bar is that an order had been made upon the garnishees to pay the money into court before the surety took the assignment of the judgment, but this does not change the principle which is applicable.

Since the relation of principal and surety has been adjudicated and established between these parties, and since an assignment has been made of the judgment from the creditor to the surety, all that could be done in another action has already been performed. Laws are established for the purpose of affording a remedy where a person has suffered a wrong. It was the plaintiff in error's duty to pay the judgment to the bank. Failing this, if he is called upon by any other person to pay the debt, he has the right to have it conclusively established that the person now calling upon him for payment occupies such a position that if he pay the debt to him, he cannot be compelled to pay the debt again to the original creditor.

When the person seeking payment has conclusively shown that he was the surety, that he paid the full amount of the debt, and that the judgment against the defendant has been assigned to him, there is nothing further necessary to be proved to authorize him to compel payment. These facts may be established by a separate action in the nature of a suit in equity for subrogation, or suretyship

may be shown, under the provisions of our statutes in the original action itself, and if the judgment is in fact assigned, the surety may enforce it. No good can result from compelling the defendant in error to maintain another suit. The plaintiff in error has had his day in court and should pay the debt without further litigation.

For these reasons the judgment of the district court is correct and should be affirmed.

OLDHAM, C., concurs. AMES, C., dissents.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.