### CARLOS GLAZIER *vs.* SAMUEL DOUGLASS.

The plaintiff held a promissory note endorsed by the defendant for the accommo-
dation of the makers, which had been protested for non-payment, the makers
having become and still remaining insolvent. A firm of which the plaintiff was
a member owed the makers a larger sum than the amount of the note, against
which, if sued, they could by statute have set off the claim held by the plaintiff.
Without requiring such application the firm paid the makers the amount owed
them, with full knowledge on the part of the plaintiff of all the facts. Held, in
an action brought against the defendant on his indorsement, that he was not
discharged by the neglect of the plaintiff to secure an application of the debt of
the firm to the payment of the note.

A creditor is under no obligation, towards a surety, of *active diligence* to collect the
debt of the principal.

The security, the discharge of which by a creditor will release a surety, must be a
mortgage, pledge or lien—some right to or interest in property which the creditor
can hold in trust for the surety and to which the surety if he pay the debt can
be subrogated; and the *right* to apply or hold must exist and be absolute.

ASSUMPSIT against the defendant as an endorser of a pro-
missory note ; tried in the superior court on the general issue
with notice, closed to the court, and the following facts
found.

The note was executed by Henry Rogers & Co., on the
26th of August, 1861, for the payment of $515, three months
from date, to the order of the defendant, endorsed by the
defendant, and after him by the plaintiff, both indorsements
being for the accommodation of the makers, for whose benefit
the note was discounted at its date at the Phœnix Bank,

where it was payable. When the note fell due the makers were insolvent and the plaintiff took up the note, due notice of non-payment by the makers having been given to the defendant. For several months prior to the indorsement of the note and down to a short time before its maturity, the firm of H. Rogers & Co. had been carrying on the business of grinding and vending coffee at Hartford, and after the making of the note, and a short time before its maturity, had sold out their business to a firm consisting of the plaintiff, C. G. Smith, and G. Lincoln, which firm was styled G. Lincoln & Co. The price agreed to be paid as the purchase money was a larger sum than the amount of the note and interest, and at the maturity of the note, and at the time when the plaintiff received notice that the defendant's indorsement was an accommodation indorsement, and after the note had been taken up by the plaintiff, there remained in the hands of G. Lincoln & Co. a greater amount of the purchase money than the amount due on the note. At this time H. Rogers & Co. had no property except the funds in the hands of G. Lincoln & Co., and they still continue to be and now are insolvent; all of which was known by the plaintiff and defendant. No agreement was ever made between any of the parties in interest that the funds so in the hands of G. Lincoln & Co. should be applied in payment of the note, and H. Rogers & Co. from time to time applied for and received from G. Lincoln & Co. the whole of the funds. The defendant had knowledge that such funds were in the hands of G. Lincoln & Co. as a firm, but took no measures to procure their application towards the payment of the note. Upon these facts the defendant claimed that it was the duty of the plaintiff to have applied a sufficient amount of the funds in the hands of G. Lincoln & Co. to pay the note, and inasmuch as he had not done so that he could not recover against the defendant. The plaintiff claimed that he was under no obligation and had no power to make such application, and that he was entitled to recover.

Upon these facts the case was reserved for the advice of this court.

Glazier *v.* Douglass.

*T. C. Perkins* and *C. E. Perkins*, for the plaintiff.

The question reserved in this case is, whether the endorser is discharged because the moneys in the hands of the firm of G. Lincoln & Co. were not applied to the payment of the note in question.

1. If this money had been owed to H. Rogers & Co. by Glazier alone, instead of his firm, he would not have been bound so to apply it. The rule as to the rights of a surety in this regard is well settled. It is laid down in *Pearl Street Congregational Society* v. *Imlay*, 23 Conn., 10, that security *appropriated by the debtor* to secure his debt, must be made available for the debt, and that the creditor can not release such security without discharging the surety *pro tanto.* But the rule goes no further than this. The cases hold that securities obtained by the diligence of the creditor only, may be released by him without discharging the surety. *Bank of Montpelier* v. *Dixon,* 4 Verm., 587, 598 ; *Crane* v. *Stickles,* 15 id., 252 ; *Baker's Exrs* v. *Marshall,* 16 id., 522 ; *Adams Bank* v. *Anthony,* 18 Pick., 238 ; *Farmers Bank* v. *Raynolds,* 13 Ohio S. R., 84. So where a statute gives a lien to the creditor on securities in his hands. *Perrine* v. *Firemen's Ins. Co.,* 22 Ala., 575. So any agreement made between the debtor and creditor when the security is given may be carried out. *Pearl Street Congregational Society* v. *Imlay,* 23 Conn., 10. So if a creditor neglects to record or make available a mortgage given as collateral security. *Schroeppell* v. *Shaw,* 3 Comst., 446 ; *Lang* v. *Brevard,* 3 Strobh. Eq., 59. So if a creditor neglects to present a claim against the estate of a deceased principal, and thereby loses a dividend. *Sibley* v. *McAllaster,* 8 N. Hamp., 389. All of these cases are much stronger than the one now in question, for in all of them in one way or another the funds were held as a security for the debt. In this case there is no pretence that these funds were so held ; on the contrary the property of Rogers & Co. was only obtained by Lincoln & Co. on their agreement to pay for it, and to apply it on this note would have been to violate their agreement. No case can be found which supports such a claim. The results of such a rule would be disastrous,

especially to banks and other corporations. The surety should have paid the note, and then secured himself.

2. But even if Glazier would have been bound so to apply these funds if he had them, it does not appear that the moneys were ever in his hands. The debt was due from *the firm*, not from him. The claim must be that every firm is obliged to hold funds in its hands to pay all endorsed notes held by any of the partners severally, executed by debtors of the firm. Such a claim appears absurd on its face, and is supported neither by authority nor principle. Glazier would have had no right without the consent of his partners to make such an application, contrary to their agreement with Rogers & Co., and thereby expose them to a suit and expense.

*C. Chapman* and *McFarland*, for the defendant.

1. It is to be observed that this is not a question whether a surety is obliged to take the risk and incur the expense of active legal measures against the principal before he can call on the surety, but simply whether, having the means of satisfaction *actually or potentially* in his own hands and under his own control, so that his action must be, not to possess himself, but to dispossess himself of the means of payment, he may thus dispossess himself, *knowing that the principal debtor is utterly insolvent*, and then call on the surety for reimbursement. In the absence of the insolvency of the principal debtors we insist that he could not do it, but with the insolvency of the principal debtors in the case, and that known to the plaintiff, we submit that the plaintiff's claim is both groundless and fraudulent. If the plaintiff had had collateral security expressly pledged for his security, and had parted with it, he would admit that he could not recover. And why? Because he had the means for his own satisfaction in his hands, and had neglected to preserve them. Will it be pretended that he would have any better legal or moral right to appropriate the security thus pledged than the fund in this case? In both cases he could have a perfect answer to any suit that might be brought against him by the debtors, and this is all the protection one can ever have.

2. The fact that the fund was in the hands of the plaintiff and two others jointly, would not relieve him of the duty to make the application, *unless it deprived him of the right or power*. But it did not. He had both to the same extent that he would have had if he alone had been the debtor.—1st. He had the same right. The statute is explicit. " In all actions brought for the recovery of a debt, if there shall be mutual debts between the plaintiff and defendant, *or a part of the defendants* if there shall be more than one, one debt may be set off against the other." Rev. Stat., tit. 1, § 92.—2d. He had the power. As the law confers the right, it implies the power to exercise it. The situation of the plaintiff, as a member of the firm, and general agent for his co-partners, implies it. The confidential and harmonious relations usually subsisting between co-partners imply it. There was not on the trial, and is not on the record, the slightest objection apparent on the part of his co-partners, or even his debtors, to this application; not even the most trifling impediment existed.

3. Possessing then both the right and the power, we confidently submit that on principle and authority his failure to exercise it was, under the circumstances, a discharge of the defendant's liability to him. " It can not be contended upon any principle that prevails with regard to principal and surety, that where the principal has left a sufficient fund in the hands of the creditor, and he thinks fit, instead of retaining it in his hands, to pay it back to the principal, the surety can ever be called on." *Law* v. *East India Co.*, 4 Vesey, 829. " If the holder has in his hands funds of the drawer, who is the real debtor, with the right to apply them to the discharge of the bill, he can have no right to call on the acceptor. Indeed the bill ought to be considered then as paid." Parker, C. J., in *Bradford* v. *Hubbard*, 8 Pick., 158. " There is no clearer rule in equity than that where the creditor has the means of satisfaction in his hands and chooses not to retain it, but suffers it to pass into the hands of the principal, the surety can never be called on." *Commonwealth* v. *Miller's Admrs*, 8 Serg. & Rawle, 457. " Where the creditor has the means

of satisfaction, *either actually or potentially*, in his hands, and does not choose to retain it, the surety is discharged." *Lichtenthaler* v. *Thompson*, 13 id., 157. The same principle is recognized and adopted in *Baker* v. *Briggs*, 8 Pick., 130. " As the maker of a note is personally liable, and the indorsers are in the nature of sureties for the performance of his act, and have a right to look to him for indemnity if the holder do any act the effect of which is to suspend or to impair or to destroy that right, he can not afterwards resort to them." *Couch* v. *Waring*, 9 Conn., 264. See also *Carpenter* v. *King*, 9 Met., 516 ; *Pearl St. Congregational Society* v. *Imlay*, 23 Conn., 16 ; *Springer* v. *Toothaker*, 43 Maine, 381 ; *Lincoln* v. *Basset*, 23 Pick., 154. Here is a fund. so firmly held by this plaintiff that no attaching creditor of H. Rogers & Co., no trustee in insolvency of that firm, no assignment by them, nor any other act that any person could do, could defeat his right to reimburse himself from it. Yet he claims the right to voluntarily surrender it to his bankrupt debtors and recover from their surety.

BUTLER, J. The defence set up in this case can not be sustained.

By a series of decisions adopting the equitable principles of the civil law, there have been annexed to the undertaking of a surety in a case like this, three conditions, and if either is broken by the creditor that undertaking becomes inoperative, and the surety is discharged.

The first is that the creditor shall present the note to the maker for payment at maturity, and if dishonored use due diligence in giving notice to the surety. The second is that no obligatory extension of the time of payment shall be given which will preclude the surety, if he pay the note to the creditor, from enforcing immediate repayment by compulsory process from the principal debtor. And the third is, that the creditor shall apply in payment of the debt, or hold in trust for the benefit of the surety, all securities which he may receive or procure for that purpose by contract or operation of law, so that if compelled to discharge the debt the surety

Glazier *v.* Douglass.

may be subrogated to them. And the surety may waive the benefit of these conditions by assent. But although in some special cases *in equity* the creditor may be compelled to proceed against the maker, the *law* annexes no condition requiring the creditor to proceed against the principal debtor, or do any act (whatever his opportunity or however much it may subserve the interest of the surety,) to procure security or enforce payment from that principal ; and he may remain entirely passive, and rely on the undertaking of the surety, whether the principal debtor be solvent or insolvent.

In respect to what shall be deemed a security within the meaning of the condition, there has been some contrariety of decision. The better opinion is that it must be a mortgage, pledge or lien—some *right* to or interest in property which the creditor can hold in trust for the surety, and to which the surety if he pay the debt can be subrogated, and the *right* to apply or hold must exist and be absolute.

Mortgages and pledges made or given as security are, as a matter of course, within the condition. But even these may be received under such a qualified or contingent contract that they may be released. Thus in *Pearl Street Congregational Society* v. *Imlay*, (23 Conn., 10,) a mortgage was given as security with the understanding that other security when offered should be received and the mortgage released, and this court held that the creditor could safely carry out the agreement and release the mortgage. The right to hold the security in that case was created by the agreement, and was contingent, not absolute, and the interest of the surety in it could be no greater than that of the creditor.

The contrariety of decision spoken of has been chiefly in respect to liens obtained by process or operation of law. Judgment liens made such by the local law, are assignable, and clearly within the condition. But it has been made a question whether a lien obtained by levy of execution on the goods of the principal debtor can be released or abandoned, and the better opinion now is that it can not be. *Mayhew* v. *Crickett*, 2 Swanston, 185 ; *Commonwealth* v. *Miller's Admrs*, 8 Serg. & Rawle, 457 ; *Chichester* v. *Mason*, 7 Leigh,

244. In the last case the execution was not levied, but the law made it a lien on all the defendant's goods as soon as issued.

But it is otherwise in respect to liens acquired by attachment on mesne process. As the creditor is " under no obligation of *active diligence*," and therefore need not commence a suit whatever his opportunity, so if he commences one he is under no obligation to pursue it, for it involves trouble and expense not required of him where goods are taken by the officer in execution. *Hurd* v. *Little*, 12 Mass., 502; *Bank of Montpelier* v. *Dixon*, 4 Verm., 587; *Crane* v. *Stickles*, 15 id., 252; *Baker's Exrs* v. *Marshall*, 16 id., 522.

Applying these principles to the case it is clear that the defence is groundless. If it appeared from the finding that the plaintiff was individually indebted to Rogers & Co. for goods purchased of them after the note was given, that indebtedness, in the absence of any agreement to that effect, would not be a security in his hands, within the condition annexed by law to the defendant's undertaking. The plaintiff would have had no *lien* upon it, and no *right* by contract or operation of law to apply it; nor would he hold the debt in trust for the benefit of the surety; nor if the defendant paid the note could he claim to be subrogated to it.

The plaintiff could have retained it, and if sued could offset it, but that the defendant had no more right to insist he should *do*, than to insist that he should *do* any other act to secure or enforce payment. The surety could have paid the note and attached the debt by foreign attachment.

The defendant cites several dicta to the effect that, " where the creditor has the means of satisfaction actually or potentially in his hands and releases them, the surety is discharged." The dicta were all made in cases where there was a lien, and the money or property held under a *right of application*. Thus, in the case in the 8th of Pickering, (*Baker* v. *Briggs*,) property had been assigned by the debtor in trust to pay the note, and the money was in the hands of the assignee subject to the call of the creditor, and Judge Parker said it was the same as if in his own hands, and as he had funds with the

right to apply them, he could not call on the surety. There the *right to apply* was created by the *assignment* of the debtor, and the money was strictly a security. In *Commonwealth* v. *Miller's Admrs.*, (8 Serg. & Rawle, 457,) a lien had been acquired by the levy of execution on goods, and the dictum cited had reference to such a state of facts. In *Law* v. *East India Co.*, (4 Vesey, 829,) funds had been *left* in the hands of the creditor to pay the debt, and there was a *right of application*. In *Lichtenthaler* v. *Thompson*, (13 Serg. & Rawle, 157,) the plaintiff was a lessor, and the defendant surety for the fulfillment of the lease, and the lessor had a *lien* by statute on the goods of the lessee which had been taken by another creditor in execution and sold, but his lien extended to the money which he fraudulently permitted a prior lessor to claim, and the court held the right to the money a security which the plaintiff was bound to apply to the officer for and obtain. These and all the other cases from which the defendant cites are cases of *lien*, with *right* of application, and would not sustain the defence if the debt to Rogers & Co. was the individual debt of the plaintiff.

But however that might be the debt was in fact the company debt of the firm of Lincoln & Co. of which the plaintiff was a member.

Although the general agent of the company within the scope of the partnership business, he had no right to insist that the debt to Rogers & Co. should be retained, and the company subjected to suit, to enable him to collect his debt of Rogers & Co. by off-set, without the assent of his co-partners. To obtain that assent required active diligence, which the surety had no right to demand of him.

The superior court must be advised to render judgment for the plaintiff.

In this opinion the other judges concurred.