Joseph J. KERESEY, Plaintiff-Appellee-Appellant,

v.

NEW MILFORD TRACTOR CORPORA-TION, Defendant-Appellee,

Thomas Costello, Defendant,

and

Frank La Grotta, Defendant-Appellant.

No. 250, Docket 23800.

United States Court of Appeals Second Circuit.

Argued April 2, 1956.

Decided June 18, 1956.

Jerome E. Caplan, Hartford, Conn., for plaintiff-appellee-appellant.

Goldstein & Peck, by Bernard S. Peck, Bridgeport, Conn., for defendant-appellee.

Harry Cohen, New Milford, Conn., for defendant-appellant.

Before FRANK, MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

This case involves a controversy which arose out of the sale by plaintiff, Joseph J. Keresey, on January 8, 1953, of twenty-two dairy cows. The transaction was evidenced by two documents: (1) a Conditional Sale Contract in the amount of $11,890.63 signed by defendants, Thomas Costello and Frank La Grotta, together named as "buyer," and by plaintiff as "seller"; and (2) a promissory note in the same amount, also signed by Costello and La Grotta, with-

out qualification and apparently as co-makers. The jury having found for plaintiff, La Grotta appeals from the judgment entered on the verdict.

■■ At the outset we may brush aside Keresey's various objections to the form of La Grotta's notice of appeal and claims of insufficient exceptions to the refusal of the trial judge to charge as requested; these are wholly lacking in merit or substance. Nor need we consider plaintiff's cross-appeal from so much of the judgment as was entered on a verdict in favor of another defendant, New Milford Tractor Corporation, by direction of the court, on the ground that the signature of New Milford Tractor Corporation on both documents was for accommodation only and *ultra vires;* this was filed subject to the condition that this court "orders a new trial for defendant-appellant La Grotta," which we do not. The appeal from the order denying the motion for a new trial need not concern us as it attempts to raise the same points as does the appeal from the judgment.

Accordingly, we shall consider on the merits only the points urged for reversal by La Grotta, which relate to the refusal to charge the jury in the language of La Grotta's requests for instructions numbered 5, 6, 7 and 9, hereinafter referred to.

The case bristles with disputed questions of fact. Costello ran a dairy farm and desired to purchase twenty-two cows from Keresey, who, because of Costello's impaired financial condition, refused to sell on the signature of Costello alone. La Grotta, a friend of Costello, urged Keresey to make the sale, which was consummated by the execution of the documents above referred to, from which it would appear that the sale was made to Costello and La Grotta as co-buyers.

As it turned out Costello became bankrupt and Keresey repossessed himself of some of the cows. When Keresey sought to recover what he claimed to be due from La Grotta, a large number of defenses and contentions were raised, some of which did not develop until the trial was in progress.

La Grotta insisted that he was not primarily liable, that he was not a co-maker or even a guarantor, but that his status was that of an accommodation endorser. This depended upon the nature of the transaction entered into by the parties, and there was evidence pro and con. As there had been no presentation of the note and no notice of dishonor given to La Grotta, this defense, if the jury credited La Grotta's version of the transaction, would have relieved La Grotta of any liability on the note, and the trial judge so charged the jury. He also charged that if La Grotta was only an endorser *any extension of time without La Grotta's consent would relieve him of liability on the note.*

La Grotta also claimed that he thought the $11,890.63 represented only the purchase price of the cows and that he was amazed to find, in the course of the trial, that the amount specified in the agreement and in the note included an item of $1970.63, which Keresey paid to the Equitable Credit Corporation in liquidation of an obligation of Costello. But Keresey adduced evidence from which the jury might decide that La Grotta knew all about these facts and that his claim of concealment had no foundation whatever. The trial judge charged the jury that if they believed La Grotta's version of this disputed question of fact they should credit La Grotta with the amount of $1970.63. But, as we shall see, no such credit was given, nor was any objection made to the charge on this point.

The Conditional Sale Contract called for monthly payments of $495.44, which seems to have been the exact amount of payments to Costello each month for milk delivered to the Brock-Hall Company. The first check was turned over to Keresey and retained by him, and, of course, reduced the amount payable on the agreement and the note. The next four checks were "refunded" by Keresey to Costello and later the whole arrange-

ment to turn the checks over to Keresey was cancelled and Keresey agreed to let Costello deliver them instead to a bank. There were two separate factual controversies over these milk checks. La Grotta claimed: (1) that the arrangement for delivery of the checks to Keresey was part of the deal evidenced by the agreement and the note, that this was in effect security behind his obligation as endorser; and (2) that he knew nothing of the refunds or the cancellation of the assignment and had not agreed to them or ratified them. Keresey's proof, however, was directly to the contrary. The trial judge left it to the jury to decide whether the original transaction included the assignment agreement, as contended by La Grotta, and instructed the jury to credit La Grotta with the amount of these milk payments by the Brock-Hall Company, "only if you find that the milk check assignment was part of the contract in suit in the beginning, and also if you fail to find that La Grotta knew of them or later ratified these payments after learning of them." The jury evidently rejected La Grotta's version of this phase of the case, as no such deduction was made.

Much testimony was offered by each side on the disputed issues over the cows. The parties could not even agree on the number of cows repossessed by Keresey, who said he took back eleven cows, sold them for $135 apiece and credited La Grotta with the proceeds, $1485. But at one place in the record Keresey said he repossessed twelve cows. Costello testified that the number was sixteen. The trial judge left this issue to the jury, who evidently believed Costello on this point, as the verdict was for Keresey in the full amount claimed by him, less $675, which is five times $135.

But La Grotta had some additional claims. He said Keresey should have taken the cows back sooner, that Keresey failed to use reasonable diligence to get a fair price for the cows when he sold them, and that he failed to protect the livestock and safeguard their value. All these issues were submitted to the jury

with appropriate instructions and the jury seems to have rejected La Grotta's version *in toto*.

■ ■ We now return to the principal issue litigated, which was the intention of the parties in signing the agreement and note. The apparent tenor of the note was that La Grotta was signing as maker, and the trial judge, therefore, properly charged the jury that La Grotta was presumed to have in fact intended to obligate himself as maker and had the burden of proving his claim that he had signed in some other capacity. He was correct, too, in charging that the intention of the parties also determined in what capacity La Grotta had signed the agreement. No objection was noted to these instructions.

■ This brings us to the specific contentions made by La Grotta on this appeal, the common core of which is his claim that he signed as surety. In substance they are that any release of "security," which is what La Grotta calls the "refund" of the milk checks and the cancellation of the milk check arrangement, or extension of time, which in some way La Grotta spells out of the "refunds," would discharge a surety and that any concealment practised by the obligor and the obligee, such as the alleged concealment of fact that the amount agreed upon was in excess of the purchase price of the cows, would similarly be a complete defense to a surety. We are told that the trial judge erred in his instructions to the jury to the effect that, if they credited La Grotta's version with respect to the milk checks and the $1970.63 item, they should merely credit La Grotta with these amounts. True it is that a fraud or concealment by which a surety is induced to assume an obligation in ignorance of material facts constitutes an absolute defense. Doughty v. Savage, 1859, 28 Conn. 146; see Watertown Sav. Bank v. Mattoon, 1905, 78 Conn. 388; Anno. 8 A.L.R. 1485; 8 Am.Jur. § 587. And, under some circumstances, this same result obtained at common law when, without the consent or ratification of the surety,

there was an extension of time, Couch v. Waring, 1832, 9 Conn. 261, see Boardman v. Larrabee, 1883, 51 Conn. 39, Feinsinger, Stearns on Suretyship (4 ed. 1934), or a release of security, see Pearl Street Congregational Soc. v. Imlay, 1854, 23 Conn. 10; Feinsinger, Stearns on Suretyship, §§ 98, 99, 257 (4 ed. 1934); Beutel, Brannon's Negotiable Instruments Law, Anno. pp. 919–924 (5 ed. 1932). Whether Connecticut will decide that these suretyship defenses have not been eliminated by the enactment of the Negotiable Instruments Law, Laws of 1897, ch. 74, is presently an open question. But we may assume, *arguendo*, that these defenses are available, and that they apply not only to the cause of action on the agreement but also to the cause of action against La Grotta on the note, for here the jury has in effect found either that La Grotta was not a surety, as he claimed to be, or, if he was, knew all the facts and knew and ratified all agreements. This is plain when the verdict is viewed in the light of the mathematics of the situation.

It will be recalled that there is a single obligation evidenced by two documents. The Conditional Sale Contract contained an agreement that "a reasonable attorney's fees" should be paid in the event of default. Accordingly, on the second count the trial judge instructed the jury that if they found for plaintiff he was entitled to an attorney's fee to be fixed by the jury. This did not apply to count one, on the note. In addition, the trial judge told the jury that plaintiff, "if entitled to recover, is entitled to recover interest on the obligation from the date of maturity of the obligation which, if I recall it, is February 20 of this year." He did not instruct the jury that they must include interest, nor after the verdict was returned, did counsel for any party raise the point, although as we shall now demonstrate, it is clear that no interest was included. It was of

course obvious that, although a verdict was to be rendered as to each of the two counts, plaintiff "can't collect twice," as the trial judge remarked.

Here are the figures:

| | | |
|---|---:|---:|
| Balance due on date of sale of 22 cows | | $11,890.63 |
| Less deductions conceded by plaintiff: | | |
| 1 milk check | $ 495.44 | |
| Sale of 11 repossessed cows at 135 | 1485.00 | 1,980.44 |
| Amount sued for, not including attorney's fees | | 9,910.19 |
| Amount awarded, not including attorney's fees | | 9,235.19 |
| Difference—5 cows at 135 | | $ 675.00 |

No allowance was made by the jury for the $1970.63 item; no allowance was made for the amount of the milk checks (except the first one), which aggregated $3468.08, nor for the four milk checks "refunded," amounting in all to $1981.-76; nor did the jury include any interest.

Against this background we come to the requests to charge. They follow:[1]

"5. I charge you that if the plaintiff refunded from the original milk check assignment certain payments without the consent or authority of the defendant[s] La Grotta [and New Milford Tractor Corporation], that would constitute a dishonor of the note and by reason thereof the defendant[s], if (an endorser) [endorsers], would be discharged from further liability on the note and conditional sale contract, if the plaintiff had failed, as was admitted by him, to present this note [to the defendants] for payment."

"6. If you find that the conditional sale contract did not correctly state the consideration or the terms of the sale between the parties and if you find that the defendant La Grotta [and New Milford Tractor

1. La Grotta adopted the requests submitted by New Milford Tractor Corporation and the phraseology of the requests hence included reference to both. The language appropriate to multiple defendants has been bracketed; that in parentheses has been added to adapt the requests to a single appellant.

Corporation] (was) [were] not advised by the plaintiff of the true state of facts concerning this instrument, (he) [they] should be discharged from any liability on the conditional sale contract and note."

"7. If you find that the plaintiff included in the conditional sale contract nineteen hundred odd dollars that he paid off to the Equitable Credit Corporation and failed to advise the defendant[s] La Grotta [and New Milford Tractor Corporation] of that fact, then regardless of whether or not you consider (La Grotta) [these parties] to be comaker[s] or endorser[s] (he) [they] should be discharged from any further liability on the instruments in question."

"9. If you find that the assignment on the milk check arrangement was a material part of the original transaction and if you further find that the plaintiff breached this arrangement without the consent of the defendant[s] La Grotta [and New Milford Tractor Corporation] then regardless of whether (he was) [they were] co-maker[s] or endorser[s] (he) [they] should be discharged from all liability in this case."

Request number 5, which is the one especially relied upon at the oral argument, is obviously defective as the refund of the milk checks would not constitute a dishonor of the note, and the trial judge had already instructed the jury that, if La Grotta was found to be an endorser only and not primarily liable the failure to present the note and give notice of dishonor to him would constitute a complete defense to the cause of action on the note.

Request number 6 is open to the objection that it is so worded as to be applicable absolutely and irrespective of the capacity in which La Grotta signed the two documents. The same is true of request number 7. Moreover, the instructions given as above noted with reference to the $1970.63 payment to Equitable Credit Corporation were apparently satisfactory to La Grotta, as no exception to these instructions, given after recalling the jury, was noted.

 Request number 9 has the same infirmity as have requests numbers 5 and 6. A change in the method of payment would have no effect on the liability of one who is not a surety.

La Grotta had a fair trial; there was no prejudicial error of any kind; and the jury disposed of the controverted issues by rejecting the testimony of La Grotta and accepting that of Keresey, except as to the number of cows repossessed by Keresey.

Affirmed.